# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re  
LEVIA WOMACK,

    Debtor.

Case No. 19-30762-WRS  
Chapter 13

## MEMORANDUM DECISION

Confirmation of Debtor's Chapter 13 plan is pending before the Court. On May 20, 2019, TitleMax of Alabama, Inc. ("TitleMax") filed an objection to confirmation. The confirmation hearing was held on June 13, 2019. At the hearing, the Court took the matter under advisement and allowed the parties additional time to file briefs. After reviewing the pleadings filed by the parties and applicable law, the Court finds that the objection to confirmation filed by TitleMax is overruled and the plan is due to be confirmed.

### I. Facts

On March 1, 2019, Debtor entered into a pawn contract with TitleMax. Pursuant to the contract, Debtor pledged the title to a 2014 Ford Fusion as collateral in exchange for a $3,792.40 loan. The terms of the contract required Debtor to repay the borrowed amount of $3,792.40, plus a pawnshop charge of $416.78. The pawn contract contained a maturity date of March 31, 2019.

Prior to the maturity date, on March 20, 2019, Debtor filed her Chapter 13 petition. Debtor's proposed plan provides for the repayment of the debt owed to TitleMax over the life of the plan. TitleMax objects to the proposed treatment by Debtor. TitleMax argues the vehicle and Debtor's right to redeem the vehicle became part of the bankruptcy estate at the commencement

of the case, but the vehicle ceased to be property of the estate once the redemption period – as extended by 11 U.S.C. § 108(b) – expired.  Debtor rejects this position and, instead, argues she held legal title to the vehicle at the time of the bankruptcy filing, and TitleMax held a security interest - which is a modifiable interest under 11 U.S.C. § 1322(b)(2).  There is no dispute between the parties the contract is a valid pawn transaction.

## II.  Law

### A.  Jurisdiction

This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). Furthermore, this Court may hear and adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).  This is a final order.

### B.  Property of the Estate

Section 541(a)(1) defines property of the bankruptcy estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Federal law determines whether a debtor's interest is property of the bankruptcy estate; however, 'the nature and existence of a debtor's interest in property is determined under state law.'" *In re Johnson*, 608 B.R. 784, 788 (Bankr. S.D. Ga. 2019) (quoting *In re Thomas*, 883 F.2d 991, 995 (11th Cir. 1989) (citations omitted)); *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests in bankruptcy are created and defined by state law.").  The commencement of the bankruptcy case, which is the date on which a debtor files his petition, is the key date for property definition purposes.  *In re Bracewell*, 454 F.3d 1234, 1237 (11th Cir. 2006); *In re Northington*, 876 F.3d 1302, 1309 (11th Cir. 2017).  While the Bankruptcy Code

determines whether the property interests became part of the bankruptcy estate, Alabama state law defines Debtor's property interests as of March 20, 2019 – the date of the petition. Any interest Debtor had in the 2014 Ford Fusion on the petition date entered into the bankruptcy estate. *In re Thorpe*, No. 18-20082, 2019 WL 1785303, at *2 (Bankr. S.D. Ga. Mar. 29, 2019) ("[W]hatever a debtor's interest in a pawned vehicle is on the petition date, if any, will enter the bankruptcy estate.").

### C. Identifying the Property Interests of Debtor and TitleMax

The parties do not dispute the validity of the pawn transaction. Instead, the parties have contrasting views as to how their interests are defined under state law and what impact, if any, the bankruptcy filing had on those interests. Because state law determines the extent of a bankruptcy estate's interest, the Court must look to Alabama state law to identify and examine the interests at issue. *See Butner v. United States,* 440 U.S. at 55, 99 S.Ct. at 918, 59 L.Ed.2d 136.

### 1. Debtor Holds Legal Title to the Pawned Vehicle and TitleMax Holds a Lien under the Alabama Pawnshop Act.

The Alabama Pawnshop Act ("APA")[1] defines a pawn transaction as "[a]ny loan on the security of pledged goods or any purchase of pledged goods on condition that the pledged goods are left with the pawnbroker and may be redeemed or repurchased by the seller for a fixed price within a fixed period of time." ALA. CODE § 5-19A-2(3) (1975). In exchange for the loan extended to the borrower, the pawnbroker receives "a lien on the pledged goods pawned for the money

---

[1] The State of Alabama does not have a separate statute governing title pawns. Instead, title pawns are governed by the Alabama Pawnshop Act and are considered pawn transactions under Alabama law. *Complete Cash Holdings, LLC v. Fryer*, 2019 WL 3520558, at * 2 (Ala. Civ. App. 2019); Alabama Pawnshop Act, § 5-19A-1 et seq., Ala. Code 1975. *Floyd v. Title Exch. & Pawn of Anniston, Inc.*, 620 So. 2d 576, 579 (Ala. 1993).

-3-

advanced and the pawnshop charge owed . . . subject to the rights of other persons who have an ownership interest or prior liens in the pledged goods." ALA. CODE § 5-19A-10. The APA defines pledged goods as "[t]angible personal property other than choses in action, securities, or printed evidences of indebtedness, which property is purchased by, deposited with, or otherwise actually delivered into the possession of, a pawnbroker in connection with a pawn transaction." ALA. CODE at § 5-19A-2(6). "[A] certificate of title to an automobile qualifies as 'pledged goods' such that its offer as security is sufficient to create a transaction subject to the Alabama Pawnshop Act, even when the pledgor retains possession of the vehicle. *In re Jones*, 544 B.R. 692, 697 (Bankr. M.D. Ala. 2016) (citing *Floyd v. Title Exchange & Pawn of Anniston, Inc.*, 620 So.2d 576, 578 (Ala. 1993)).

A pawn transaction is a nonrecourse loan. Section § 5-19A-6, ALA. CODE 1975, provides that "a pledgor shall have no obligation to redeem pledged goods or make any payment on a pawn transaction." Despite its nonrecourse nature, the pawn transaction establishes a debtor/creditor relationship between the borrower and pawnbroker. *See In re Young*, 281 B.R. 74, 78-79 (Bankr. S.D. Ala. 2001) (noting the nonrecourse loan gave rise to a contingent claim such that a pawnbroker is considered a creditor under the Bankruptcy Code).

Under the APA, until a borrower defaults on a pawn contract, a pawnbroker has no remedy available to it. *See Complete Cash Holdings, LLC v. Fryer*, 2019 WL 3520558, at * 2 (Ala. Civ. App. 2019). That is because under Alabama law, prior to a debtor's default, a debtor retains legal title to personal property. *See Pierce v. Ford Motor Credit Co.*, 373 So. 2d 1113, 1115 (Ala. Civ. App. 1979) (noting it is upon a debtor's default that title and right of possession pass to a creditor); *see also In re Jones*, 544 B.R. at 700 (stating that under Alabama law, "a debtor retains legal title to personal property securing a creditor's interest up to the point of default, but upon default the

debtor's legal title passes to the secured creditor."). A debtor defaults on the pawn transaction following the expiration of the redemption period. *See* ALA. CODE § 5-19A-6 ("Pledged goods not redeemed within 30 days *following the originally fixed maturity date* shall be forfeited to the pawnbroker and absolute right, title, and interest in and to the goods shall vest in the pawnbroker.") (emphasis added). The redemption period is the 30-day grace period following the stated maturity date. Once the redemption period expires, a debtor is in default under the APA and the pawned vehicle is forfeited to the pawnbroker. *Id.* Therefore, under the APA, a pawnbroker does not gain legal title to a pawned vehicle until the redemption period has expired. *In re Jones*, 544 B.R. at 698.

Debtor borrowed $3,792.40 from TitleMax and, in exchange, TitleMax received a lien on Debtor's certificate of title to the 2014 Ford Fusion. The pawn contract signed by Debtor and TitleMax provides as follows:

> This pawn is non-recourse to you. You shall have no obligation to redeem the Vehicle or make any payment on this Pawn. Nothing in this Agreement gives us any recourse against you personally other than our right to take possession of the Vehicle *upon your default*, . . . .

(Doc. 23-1, ¶ 5) (emphasis added).

Pursuant to the contract and the APA, TitleMax's only recourse against Debtor is to repossess the vehicle, but only upon Debtor's default. (Doc. 23-1, ¶ 7) ("We may take possession of the Vehicle upon your default."). The contract further states that Debtor will be in default of the contract by failing "to timely pay any amount payable [ ] when due. . . ." (Doc. 23-1, ¶ 7). The contract provides a maturity date of March 31, 2019. (Doc. 23-1). When Debtor filed her Chapter 13 petition on March 20, 2019, the maturity date had not yet lapsed. Under the APA, Debtor would have had 30 days following the maturity date to redeem the vehicle. *See* ALA. CODE § 5-19A-6. And, Debtor would not be in default until the expiration of the redemption period. *Id.* TitleMax

-5-

Case 19-30762    Doc 28    Filed 06/09/20    Entered 06/09/20 16:06:36    Desc Main
                  Document      Page 5 of 13

did not repossess the vehicle prior to the bankruptcy filing because it had no legal right to repossession prior to Debtor defaulting on the contract. Accordingly, Debtor retained possession of the vehicle and her ownership rights as of the petition date and those rights entered into the bankruptcy estate and TitleMax was merely a lienholder.

### 2. TitleMax Holds a UCC Security Interest.

The pawn contract granted TitleMax a pawnshop lien pursuant to the APA; however, the contract also granted TitleMax a security interest in the pawned vehicle. A pawn transaction may also be a secured transaction pursuant to Article 9A of the UCC. *In re Jones*, 544 B.R. at 698 ("[A] pawn transaction may also qualify as a security agreement, and a pawnbroker may obtain both a pawnshop lien and a UCC security interest on the same pledged goods, or collateral, from the same transaction."); *In re Mattheiss*, 214 B.R. 20, 29-30 (Bankr. N.D. Ala. 1997); *Harkness v. EZ Pawn Ala., Inc.*, 724 So.2d 32, 33 (Ala.Civ.App. 1998) ("pawn transactions in which a debtor consensually grants a pawnbroker a security interest in goods . . . are secured transactions. . . ."). Under the UCC, a "security agreement" is defined as "an agreement that creates or provides for a security interest." ALA. CODE § 7-9A-102(73). Alabama Code § 7-1-201(35) defines "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation."

> To create a security interest, parties need only evidence an intent to establish a security agreement. No particular words need be used to evidence the security interest. Rather, the language of the instrument must simply 'lead [ ] to the logical conclusion that it was the intention of the parties that a security interest be created.'

*In re Burnsed*, 224 B.R. 496, 498 (Bankr. M.D. Fla. 1998) (quoting *Gibson v. Resolution Trust Corp.,* 51 F.3d 1016, 1022 (11th Cir.1995) (citations omitted)). In order to perfect a security

interest, the pawnbroker must apply for and obtain a certificate of title containing the pawnbroker's name and address as the lienholder. *See* ALA. CODE § 32-8-61(b).[2]

The pawn contract at issue is entitled "Pawn Ticket and Security Agreement." (Doc. 23-1). The agreement was executed by Debtor and TitleMax and detailed the terms of the transaction – including the fact that Debtor was granting TitleMax "a security interest in the Vehicle and the Title." (Doc. 23-1, ¶ 1). The agreement unequivocally evidences both Debtor's and TitleMax's intentions to create a security interest. TitleMax subsequently perfected its security interest by obtaining a certificate of title containing the name and address of TitleMax as the lienholder. *See* ALA. CODE § 32-8-61(b). Therefore, the pawn transaction granted TitleMax a security interest in the vehicle.

Under Alabama law, at the time of the bankruptcy filing, TitleMax held a pawnshop lien and a security interest in the pawned vehicle and Debtor held legal title. The issue then becomes whether Debtor can modify TitleMax's interest through the Chapter 13 plan.

### D. Modification of TitleMax's Security Interest is Permissible Pursuant to 11 U.S.C. § 1322(b)(2).

The nature of a debtor's rights that becomes property of the estate affects the extent to which a Chapter 13 debtor may modify the rights of a secured creditor. *In re Jones*, 544 B.R. at 700 (citations omitted). As set forth above, Debtor held legal title to the vehicle and TitleMax held a security interest at the commencement of the case. A security interest formed under the UCC

---

[2] ALA. CODE § 32-8-61(b):

> A security interest is perfected by the delivery to the department of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if the delivery is completed within 30 days thereafter, otherwise, as of the time of the delivery.

-7-

creates a secured claim which may be modified under 11 U.S.C. § 1322(b)(2). *In re Burnsed*, 224 B.R. at 499. 11 U.S.C. § 1322 (b)(2) provides in relevant part as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, . . . .

"Under 11 U.S.C. § 1322(b)(2), debtors may modify the rights of certain secured creditors in their chapter 13 plan, but debtors 'succeed[ ] to no greater interest in an asset than that held by the debtor at the time the bankruptcy petition was filed.'" *In re Thorpe*, No. 18-20082, 2019 WL 1785303, at *4 (Bankr. S.D. Ga. Mar. 29, 2019) (quoting *In re Dunlap*, 158 B.R. 724, 727 (M.D. Tenn. 1993)).

The pawn contract and certificate of title listing TitleMax as the lienholder provided TitleMax with a perfected security interest in the vehicle. TitleMax's claim is secured by the certificate of title to Debtor's 2014 Ford Fusion, which can be provided for and modified through Debtor's Chapter 13 plan. In the case of *In re Burnsed*, 224 B.R. 496 (Bankr. M.D. Fla. 1998), the bankruptcy court held the title loan was a secured claim that could be modified under 11 U.S.C. § 1322(b)(2) through the debtor's plan. *Id.* at 501. In *In re Burnsed*, the debtors filed bankruptcy prior to their title loan maturing and proposed to pay the lender as a secured claim over the life of the plan. *Id.* at 497-98. The court determined the contract at issue granted the lender a security interest in the debtors' certificates of title. *Id.* at 498-99. The *Burnsed* Court noted the debtors maintained possession of the vehicles and had not defaulted on the contracts as of the petition date. *Id.* at 500. As such, debtors' ownership rights became property of the estate upon the bankruptcy filing. *Id.* The court held the title pawn lender was the holder of a secured claim that was subject to modification through the plan under 11 U.S.C. § 1322(b)(2). *Id.* at 501.

-8-

Case 19-30762   Doc 28   Filed 06/09/20   Entered 06/09/20 16:06:36   Desc Main
Document      Page 8 of 13

A similar case, relied upon by the *Burnsed* Court, is the case of *In re Lopez*, 163 B.R. 189 (Bankr. D. Col. 1994). In *In re Lopez*, the debtor filed bankruptcy before the pawn contract matured and proposed to pay the debt through the plan. *Id.* at 190. The court found the pawn contract granted a security interest to the pawnbroker and the debtor retained its ownership interests. *Id.* The court held the pawn transaction was a secured transaction that could be modified through the debtor's plan under § 1322(b)(2). *Id*.

Similar to the debtors in *In re Burnsed* and *In re Lopez*, Debtor maintained possession of the vehicle and had not defaulted on the pawn contract prior to filing her petition. TitleMax simply held the title to the vehicle as security for the pawn transaction. At the time of the bankruptcy filing, TitleMax had not repossessed the vehicle, nor did it have the right to repossess the vehicle because there had been no default by Debtor. Therefore, at the time the bankruptcy was filed, the property interests that became property of the estate were not mere rights of redemption, but ownership rights. *See In re Burnsed*, 224 B.R. at 500. Because Debtor still held legal title to the vehicle and TitleMax held a security interest, TitleMax's rights are subject to modification under § 1322(b)(2). *See In re Jones*, 544 B.R. at 701 (citing *Geddes v. Mayhall Enters., LLC (In re Jones),* 304 B.R. 462, 466–68 (Bankr.N.D.Ala.2003) (noting a "debtor cannot modify the rights of the secured creditor under § 1322(b)(2) if the debtor has lost legal title to the collateral")). Accordingly, the secured claim of TitleMax can be modified by the Debtor's Chapter 13 plan under 11 U.S.C. § 1322(b)(2).

### E. TitleMax's Reliance on *In re Northington* is Misplaced.

TitleMax maintains that a pawn transaction cannot be modified through a Chapter 13 plan as proposed by Debtor. Instead, TitleMax argues the automatic nature of the APA requires automatic forfeiture of the vehicle following the expiration of the redemption period. TitleMax asserts the only impact the bankruptcy filing had on the pawn transaction was that it extended the redemption period by 60 days from the petition date pursuant to 11 U.S.C. § 108(b).[3] TitleMax concedes the vehicle entered the bankruptcy estate, but argues it subsequently "dropped out" and ceased to be estate property once the extended redemption period expired.

TitleMax relies on the recent Eleventh Circuit case of *In re Northington*, 876 F.3d 1302 (11th Cir. 2017), to support its position that the pawned vehicle became property of the estate at the commencement of the case, but subsequently dropped out following the expiration of the redemption period as extended by 11 U.S.C. § 108. In *In re Northington*, the maturity date contained within the pawn contract at issue had lapsed and the redemption period for the pawned vehicle was still running when the bankruptcy petition was filed. 876 F.3d at 1306. Therefore, the debtor's right to redeem became property of the estate. *Id.* at 1310. The redemption period was extended sixty days from the petition date pursuant to 11 U.S.C. § 108(b). *Id.* at 1314. Once the

---

[3] 11 U.S.C. § 108(b):

> Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of--
> **(1)** the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> **(2)** 60 days after the order for relief.

-10-

redemption period – as extended by 11 U.S.C. § 108(b) – expired, the pawned vehicle dropped out of the estate due to the automatic nature of the Georgia pawn statute. *Id.* at 1315. The *Northington* Court noted that

> [i]f an asset is by its state-law nature static, then it remains so in the bankruptcy estate. If, by contrast – as is often the case – state law imbues an estate asset with a sort of internal dynamism, then that characteristic will follow the asset into the estate.

876 F.3d at 1314. The *Northington* Court held that following the loan's maturity date, the debtor had conditional possessory rights to the vehicle, as well as the right to redeem; but, once the redemption period lapsed, the debtor's rights were automatically extinguished and the vehicle automatically forfeited to TitleMax. *Id.* at 1315.

This case presents a set of facts similar to those before the *Northington* Court with one slight – but determinative – difference. Unlike the pawn contract in *In re Northington*, the pawn contract at issue here had not matured as of the petition date and Debtor held legal title to the pawned vehicle, not mere redemption rights. While § 108(b) operates to extend the grace period following the maturation of the pawn contract from 30 days to 60 days from the bankruptcy filing, it has no application to the pawn contract at issue. Debtor's case was filed March 20, 2019, prior to the March 31, 2019 maturity date. Since the contract had not yet matured as of the date of filing, the grace period had not begun to run. *See* ALA. CODE § 5-19A-6 (1975) ("Pledged goods not redeemed within 30 days *following the originally fixed maturity date* shall be forfeited to the pawnbroker and absolute right, title, and interest in and to the goods shall vest in the pawnbroker.") (emphasis added).

Furthermore, 11 U.S.C. § "108 was meant to expand the state law rights of debtors. It was not meant to limit the rights the Bankruptcy Code otherwise provides the debtor." *In re Francis*, 489 B.R. 262, 269 (Bankr. N.D. Ga. 2013) (citing *In re Bates,* 270 B.R. 455, 466 (Bankr. N.D. Ill.

2001) ("nothing in Section 108(b) transforms the extension of a non-bankruptcy right into a negation of bankruptcy rights specifically accorded elsewhere in the Code")). Section 1322(b)(2) specifically provides for the modification of ownership rights in pawned vehicles. *See In re Burnsed*, 224 B.R. at 499. Therefore, § 108, which expands a debtor's redemption rights, cannot be used to limit Debtor's ownership interest and right to modify a secured claim as codified in § 1322(b)(2).

Debtor held legal title to and possession of the vehicle at the time of the bankruptcy filing. As such, Debtor's legal title interest and possessory interest entered the bankruptcy estate. Due to the timing of the filing, as well as the nature and extent of the interests involved as defined by Alabama law, TitleMax held a modifiable interest pursuant to 11 U.S.C. § 1322(b)(2) of the Bankruptcy Code. Upon the filing of her plan, Debtor exercised the option available to her in order to keep her vehicle and provided for the full repayment of the debt owed to TitleMax through her Chapter 13 plan. Accordingly, the Court finds Debtor is entitled to modify TitleMax's secured claim under 11 U.S.C. § 1322(b)(2).

### III. Conclusion

For the reasons set forth above, TitleMax's Objection to Confirmation is overruled and Debtor's proposed plan will be confirmed. The Court will enter an Order by way of a separate document.

Done this 9th day of June, 2020.

/s/ William R. Sawyer

William R. Sawyer
United States Bankruptcy Judge

-12-

Case 19-30762    Doc 28    Filed 06/09/20    Entered 06/09/20 16:06:36    Desc Main
Document    Page 12 of 13

c:	Debtor
Richard D. Shinbaum, Attorney for Debtor
Sabrina L. McKinney, Trustee
Jeffrey L. Ingram, Attorney for TitleMax of Alabama, Inc.
TitleMax of Alabama, Inc.

-13-

Case 19-30762    Doc 28    Filed 06/09/20    Entered 06/09/20 16:06:36    Desc Main
Document      Page 13 of 13